WOLLMUTH MAHER & DEUTSCH LLP
500 Fifth Avenue
New York, New York 10110
Phone: 212-382-3300
John D. Giampolo, Esq.
Email: jgiampolo@wmd-law.com

*Attorneys for the Debtor and Debtor-in-Possession,*
*Human Condition Safety Inc.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| HUMAN CONDITION SAFETY INC., | Case No: 17-10585-SHL |
| Debtor.[1] | |

**MOTION FOR ENTRY OF ORDERS (I)(A) APPROVING BIDDING PROCEDURES FOR SALE OF SUBSTANTIALLY ALL DEBTOR'S ASSETS, (B) SCHEDULING AN AUCTION, (C) APPROVING THE FORM AND MANNER OF NOTICE THEREOF, (D) APPROVING ASSUMPTION AND ASSIGNMENT PROCEDURES, AND (E) SCHEDULING A SALE HEARING AND APPROVING THE FORM AND MANNER OF NOTICE THEREOF, AND (II)(A) APPROVING THE SALE OF SUBSTANTIALLY ALL DEBTOR'S ASSETS FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS, AND ENCUMBRANCES AND (B) APPROVING THE ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES IN CONNECTION THEREWITH; AND (III) GRANTING RELATED RELIEF**

Human Condition Safety Inc., a Delaware corporation with its principal assets and

principal place of business located at 61 Broadway, Suite 2710, New York, New York 10006, as

debtor and debtor-in-possession (the "Debtor") in the above-captioned Chapter 11 case (the

"Chapter 11 Case" or the "Case"), by and through its undersigned attorneys, hereby submits this

---

[1] The Debtor in this chapter 11 case, along with the last four digits of the Debtor's tax identification number, is Human Condition Safety Inc. (2476). The address of the Debtor's corporate headquarters, and sole office location, for noticing purposes is 61 Broadway, Suite 2710, New York, New York 10006.

motion (the "Motion") pursuant to sections 105(a), 363, and 365 of title 11 of the United States

Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code") and Rules 2002, 6004, 6006, 9007, 9008,

and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), for entry of

an order substantially in the form attached hereto as Exhibit 1 (the "Bidding Procedures Order"):

(i)      approving the proposed procedures substantially in the form attached as Exhibit A

to the Bidding Procedures Order (the "Bidding Procedures")[2] to be used in connection with the

sale (the "Sale") of any or substantially all Debtor's assets (the "Assets"), including approving

use of a proposed form of asset purchase agreement substantially in the form attached as Exhibit

B to the Bidding Procedures Order (the "Specimen APA");

(ii)     scheduling an auction for the Assets (the "Auction"), the hearing with respect to

the approval of the sale (the "Sale Hearing"), and approval of the form and manner of notice

thereof;

(iii)    authorizing certain procedures related to the Debtor's assumption and assignment

of executory contracts and unexpired leases (the "Assumption and Assignment Procedures") in

connection with any Sale; and

(iv)     granting related relief.

The Debtor also moves the Court, pursuant to Bankruptcy Code sections 105, 363, and

365, and Bankruptcy Rules 2002, 6004, and 6006 for entry of one or more orders in substantially

the form attached hereto as Exhibit 2 (the "Sale Order"):

(i)      authorizing the sale of the Assets to one or more successful bidders at the Auction

(each such sale, a "Sale Transaction") free and clear of all liens, claims, interests, and

encumbrances;

(ii)    authorizing the assumption and assignment of certain executory contracts and unexpired leases in connection therewith; and

(iii)    granting related relief.

In support of this Motion, the Debtor relies upon the Declaration of Gregory Wolyniec in support of the Motion (the "Sale Declaration") filed contemporaneously herewith as Exhibit 3 to this Motion and the Declaration of Gregory Wolyniec Pursuant to Local Rule 1007-2 in Support of Debtor's Chapter 11 Petition and Requests for First Day Relief [Doc 7] filed on March 13, 2017 in this case (the "First Day Declaration") and respectfully represent as follows:

## JURISDICTION AND VENUE

1.    The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

2.    Venue in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND[3]

### A.  General Background

3.    The Debtor filed a voluntary petition (the "Petition") for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (the "Bankruptcy Code") on March 10, 2017 (the "Petition Date") commencing this Chapter 11 Case.  As of the date hereof the Debtor continues to operate its business and manage its property as a debtor in possession pursuant to Bankruptcy Code sections 1107(a) and 1108.

4.    In summary, the Debtor is a privately held company that develops, markets and sells innovative virtual reality and internet based technology products designed to improve workplace

---

[2] Capitalized terms used but not otherwise defined herein shall have the same meanings ascribed to them in the Bidding Procedures Order or in the Bidding Procedures attached thereto.

safety for clients in the construction industry and other hazardous industries, including developing virtual reality and internet based software programs with wearable sensors to remotely monitor and assess workers' safety conditions and to administer training helping workers learn to properly and safely perform their job duties. A client would pay a one-time fee for the Debtor to design and install such a program tailored to the individual client's needs and thereafter the client would pay monthly fees to use the program and for the Debtor to continue hosting and servicing it.

5. But the process of researching, developing and bringing the Debtor's groundbreaking new products to market proved to be much more time consuming and costly than anticipated. The process was plagued with unanticipated delays, as well as unanticipated and unsustainable costs and debt due, in part, to inefficiencies in the Debtor's operations. This ultimately led to the departure of some of the Debtor's leadership and a restructuring of the Debtor's operations.

6. Thanks to the skill and effort of Debtor's current leadership, within the months before the Petition Date, Debtor was finally able to finalize and begin marketing, selling and servicing its first products with much success, and continuing to do so long term was forecasted to be highly profitable as Debtor's products were well-received in the market place. In order to preserve the Debtor's value and its employees' jobs, it recently became clear that Debtor could not adequately address its liquidity needs outside of bankruptcy and that its only viable option was to proceed with this Chapter 11 effort and with the proposed debtor-in-possession financing arrangement negotiated with AIG PC Global Services, Inc., as the postpetition lender ("DIP Lender"), which arrangement (the "DIP Facility") was approved by the Court under the Final Order Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364, and 507, Bankruptcy Rules 2002, 4001,

---

[3] The relevant background facts are more fully set forth in the First Day Declaration and in the Sale Declaration

and 6004, and Local Rule 4001-2 (I) Authorizing Debtor to Obtain Postpetition Financing, (II) Authorizing Use of Cash Collateral, (III) Granting Liens and Providing Super-Priority Administrative Expenses Status, (IV) Granting Adequate Protection, and (V) Granting Related Relief, entered on April 19, 2017 in the Case [Doc 39] (the "Final DIP Financing Order").

7.    The DIP Facility and Final DIP Financing Order provide for Debtor to continue operating in bankruptcy while implementing a dual-track process to maximize value for stakeholders and preserve employees' jobs by simultaneously pursuing (i) a reorganization plan, and (ii) a sale of substantially all Debtor's assets with the transition of its employees, operations, and files.

8.    As above, around the time of the Petition Date, the Debtor's products were well-received in the market place and were thus forecasted to be highly profitable.  During the weeks after the Petition Date, potential customers continued to express interest in Debtor's products and several new customer contracts were executed.  However, in recent weeks market interest in Debtor's products materially declined at an increasing rate with a growing number of potential customers expressing the same sentiment—that they are interested but not willing to contract for Debtor's products because they are concerned that Debtor will not successfully reorganize and emerge from Chapter 11 and such customers may soon be left with no one to continue hosting and servicing the Debtor's unique products.

9.    Through its current leadership and other officers, the Debtor made its best and extensive efforts, both before and after the Petition Date, to secure sufficient customer contacts, to increase revenues, to seek additional financing and new potential investors to enable a successful reorganization effort, and, alternatively, seeking purchasers for the Debtor or its

---

which are each incorporated herein by reference.

assets.  Despite such efforts, there has been no means to fund or implement a confirmable reorganization plan and at this time the Debtor will soon exhaust the maximum funding under the DIP Facility and it has no viable option to preserve value except to conduct an expedited sale of substantially all assets and pursue a proposed Chapter 11 liquidating plan (the "Plan") which will be filed shortly after the Sale Motion and which is estimated to provide distributions to allowed general unsecured claims after satisfaction of secured and priority claims. To accommodate this course of action, the DIP Lender has agreed to extend milestones under the DIP Facility and has agreed to permit a certain portion of DIP Facility advances to be used to help fund distributions to allowed general unsecured claims pursuant to a confirmed Plan agreeable to the DIP Lender and otherwise consistent with the Final DIP Financing Order.

### B.  The Marketing and Sale Process

10.  As above, during several months before the Petition Date and throughout the months following the Petition Date, through its Debtor's current leadership and other officers, the Debtor made robust and extensive efforts to market the Debtor and its assets to seek additional financing, new potential investors as well as purchasers.  Such efforts included, without limitation, soliciting and engaging in meetings with a wide range of potential purchasers and investors familiar with the Debtor's tech driven industry, including venture capital firms, private equity firms, family office managers, high net worth individuals, strategic partners and buyers, as well as competitors.  Debtor's current leadership engaged in approximately 30 extensive meetings with approximately 30 different targeted potential purchasers and investors. Additionally, over the past months Debtor's current leadership has repeatedly invited all of its 36 different existing preferred equity shareholders to participate or otherwise assist in soliciting potential purchasers and investors for the Debtor or its assets.

11. Through the foregoing marketing process, a list of potential buyers (the "Potential Buyer List") was developed using three general introduction routes: (i) analysis of inbound requests to Debtor's website, emails, or phone calls received from interested parties who learned of the Debtor through the marketplace, (ii) proactive outreach by the Debtor to specifically targeted potential purchasers and investors, including potential purchasers and investors targeted based on their prior or existing relationships with the Debtor, its shareholders or its employees and those targeted based on the nature of the potential purchaser or investor (ex: strategic buyer or a competitor), and (iii) Debtor's use of family offices and prepetition advisors who assisted in helping to introduce Debtor to potential purchasers and investors.

12. Much of the foregoing marketing efforts were led by Gregory Wolyniec, who is currently Debtor's President, Director and Chief Executive Officer, and by Adam Bellin, who is currently Debtor's Head of Business Development.  In addition to the foregoing, to assist in marketing the Debtor and its assets, Debtor prepared a high quality investor presentation which was approved by its board of directors and which included a company and product background, market overview, company financials, and management team resumes.  These materials assisted in a well-rounded description of the business and the Debtor's business and its business assets which are largely centered on patent rights to its products for which non-provisional patent applications have been timely filed to preserve value.

13. Given the foregoing marketing efforts which were robust and well-tailored to Debtor's niche industry and given the Debtor's liquidity constraints, the Debtor submits that there would no material benefit from any further marketing efforts and that Debtor's liquidity constraints have made any further marketing efforts virtually impossible and unjustifiable.

14. The Debtor submits that conducting the Sale process pursuant to the expedited timelines and procedures under the Bidding Procedures, and by simply soliciting from the Potential Buyer List which Debtor already spent substantial time and effort accumulating, is reasonable and is in the best interests of the Debtor's estate in light of the Debtor's liquidity and will provide parties with sufficient time and information necessary to formulate a bid to purchase the Debtor's assets.

15. Specifically, potential bidders will have access to comprehensive information prepared by the Debtor and a substantial body of data, inclusive of presentations and discussions with directors and officers as requested. Moreover, many of the potential bidders have already expressed interest and already become knowledgeable about the Debtor.

16. Because the Debtor will soon have insufficient capital to continue operating its business, the expedited Sale process under the Bidding Procedures is the most effective, feasible and efficient course for selling Debtor's business while it still has realizable value and can be maintained as a going concern.

## C. The Proposed Specimen Asset Purchase Agreement

17. The Debtor has prepared a form asset purchase agreement (the Specimen APA), substantially in the form attached to the Bidding Procedures Order as Exhibit B, which will be provided to all Notice Parties (including everyone on the Potential Buyer List, as well as all Debtor's known creditors, shareholders and contract counterparties) in connection with the sale bidding process for Debtor's Assets. Potential bidders will be required to submit to the Debtor an executed Specimen APA, with any modifications to it, reflecting the terms upon which the potential bidder would seek to effect a purchase of the Assets and the assumption of certain

liabilities as soon as is practicable, but no later than the Bid Deadline established by entry of the Bidding Procedures Order.

18.  To the extent a stalking horse purchase offer materializes, the Debtor may also entertain entering into an agreement (a "Stalking Horse Agreement") with such a purchaser ("Stalking Horse Purchaser"), as may be determined by the Debtor in its business judgment prior to the Bid Deadline or otherwise prior to Debtor's selection of a successful bidder for Assets. Upon the selection of a Stalking Horse Purchaser, if any, the Debtor will file and serve a notice that includes: (i) the identity of the proposed Stalking Horse Purchaser; (ii) a summary of the key terms of the Stalking Horse Agreement; (iii) a summary of the type and amount of bid protections (the "Bid Protections"), if any, being offered to the proposed Stalking Horse Purchaser; (iv) a summary of any necessary modifications or amendments to the Bid Procedures; and (v) a copy of the Stalking Horse Agreement.  In the event a Stalking Horse Purchaser is selected, the Debtor will request that the Court set a hearing to approve any such Stalking Horse Purchaser, Stalking Horse Agreement, and accompanying Bid Protections on an expedited basis.

19.  In the event that the Debtor does not select a Stalking Horse Purchaser, the Debtor intends to proceed with the Bidding Procedures as otherwise set forth in the Bidding Procedures and Bidding Procedures Order and, in accordance with same, prior to the Sale Hearing Debtor will provide to all Notice Parties (as defined below) the terms (or a summary of the principal terms) of any Successful Bids.

### D. The Notice Parties and Notice Procedures

20.  In connection with providing notice of the Sale, Bidding Procedures, Auction, Sale Hearing and all related deadlines, on or within two (2) days after entry of this Bidding Procedures Order, Debtor shall serve (such service date being the "Notice Date") upon all Notice

Parties, (i) by email with hardcopy by regular mail, or (ii) by overnight or same day courier, copies of (a) the signed Bidding Procedures Order (along with the Bidding Procedures and all other exhibits attached to the Bidding Procedures Order entered by the Court); (b) a Specimen APA with accurate schedules attached thereto; (c) a complete and accurate sale notice signed and filed on behalf of the Debtor substantially in the form attached as Exhibit C to the Bidding Procedures Order (the "Sale Notice") providing notice of the Sale, Bid Deadline, Auction date, Sale Hearing and other relevant information; (d) a notice signed and filed on behalf of the Debtor substantially in the form attached to the Bidding Procedures Order as Exhibit D (the "Assumption and Assignment Notice") which shall identify Debtor's executory contracts and unexpired leases (each a "Contract"), list Debtor's good faith calculation of cure amounts ("Cure Costs") for each, expressly state that assumption or assignment of a Contract is not guaranteed and is subject to the agreement of the Successful Bidder and Court approval, and prominently display the deadline to file objections to the assumption, assignment, or sale of the Debtor's Contracts in connection with any Sale; and (e) the proposed Sale Order in substantially the form attached as Exhibit 2 to the Motion (all of the foregoing collectively, the "Sale Bidding Procedures Notice Package").

21. The "Notice Parties" shall include (a) all parties included in the Potential Buyer List and any other entities known by the Debtor to have expressed an interest in a Sale transaction or any of the Assets during the past several months of Debtor's marketing efforts; (b) the Postpetition Lender and any persons and entities known by the Debtor to have asserted any lien, claim, interest, or encumbrance in the Assets (for whom identifying information and addresses are available to the Debtor); (c) all non-Debtor counterparties (each a "Counterparty" and collectively, "Counterparties") to any of Debtor's Contracts; (d) any governmental authority

known to have a claim against the Debtor in this Chapter 11 Case; (e) the United States Attorney General; (f) the United States Attorney for the Southern District of New York; (g) the Federal Trade Commission; (h) the office of the United States Trustee for the Southern District of New York; (i) the Internal Revenue Service; (j) the United States Securities and Exchange Commission; (k) all of the Debtor's known creditors (for whom identifying information and addresses are known to the Debtor); (l) all parties who have filed a notice of appearance and request for service of papers in this Case pursuant to Bankruptcy Rule 2002; (m) all parties holding an equity interest in the Debtor as of the Petition Date; and (n) all other persons and entities as directed by the Court.

### E.  Assumption and Assignment Procedures

22.  In connection with any Sale Transaction, the Debtor proposes that certain Contracts may be assumed and assigned to Successful Bidder(s). The Assumption and Assignment Procedures will, among other things, notice the Counterparties of the potential assumption and assignment of their Contracts and the Debtor's calculation of Cure Costs with respect thereto.

23.  As noted above and as set forth more fully in the Bidding Procedures Order and in the Assumption and Assignment Notice, the Assumption and Assignment Procedures provide, in sum, that on or within 2 days after the date the Bidding Procedures Order is entered, Debtor will file and serve all Counterparties with an Assumption and Assignment Notice identifying Contracts proposed for possible assumption and assignment, listing Debtor's good faith calculation of Cure Costs for each, and prominently displaying that the deadline to file objections to the assumption, assignment, or sale of any Contracts, whether the objection is based on Cure Costs, assignability or alleged failure to adequate assurance of future performance, is shall be the Sale Objection Deadline which shall occur at least one (1) week

after service of the Assumption and Assignment Notice and shall occur three (3) business days after the Debtor files a notice disclosing the Auction results identifying any Contract proposed to be assigned to a Successful Bidder.

24.  Upon request by a Counterparty, the Debtor shall serve, by electronic mail, the evidence of adequate assurance of future performance under a Contract proposed to be assumed and assigned to a Successful Bidder, including the legal name of the proposed assignee, the proposed use of any leased premises, the proposed assignee's financial ability to perform under that Contract, and a contact person with the proposed assignee that Counterparties may contact if they wish to obtain further information regarding the purchaser of the Assets.

### F. The Need for an Expedited Sale Process

25.  Debtor believes that proceeding with the Bidding Procedures on an expedited basis represents the best means to generate and maximize value for the estate.

26.  As above, despite extensive efforts since the Petition Date, Debtor has not been able to secure any means to fund or implement a confirmable reorganization plan and at this time the Debtor will soon exhaust the maximum funding under the DIP Facility and then Debtor will be left without the means to continue business operations.  Thus, the Debtor has no viable option to preserve value except to conduct an expedited sale of its Assets as a going concern while the Debtor still is a going concern.

27.  Accordingly, the Debtor respectfully requests that the Bidding Procedures Order be entered as soon as possible on shortened notice approving and scheduling the dates and deadlines requested in accordance with the expedited timeline below.[4]  While Debtor seeks the expedited

---

[4] What is set forth herein is a discussion about and summary of the proposed Bidding Procedures and the proposed timeline therefore.  Such Bidding Procedures and proposed timeline therefore are more fully set forth in the proposed Bidding Procedures Order attached hereto and in all exhibits attached thereto.

timeline below, Debtor reserves the right to request dates and deadlines different from those set

forth below subject to the Court's direction and availability for hearing dates.

| | |
|---|---|
| **July 14, 2017**<br>**Notice Date** | On or within two (2) days after entry of this Bidding Procedures Order, Debtor shall serve upon all Notice Parties, (i) by email with hardcopy by regular mail, or (ii) by overnight or same day courier, copies of the Sale Bidding Procedures Notice Package. |
| **July 21, 2017 at 5:00 p.m.**<br>**(prevailing Eastern Time)**<br>**Bid Deadline** | The Bid Deadline on which all bids must be received by the parties specified in the Bidding Procedures shall be seven (7) days after the Notice Date. |
| **July 24, 2017 at 10:00 a.m.**<br>**(prevailing Eastern Time)**<br>**Auction Date** | The Auction is to be held at the office of Wollmuth Maher & Deutsch LLP, 500 Fifth Avenue, New York, New York 10110 (the "Auction Date") one (1) business day after the Bid Deadline. |
| **July 25, 2017 at 5:00 p.m.**<br>**(prevailing Eastern Time)**<br>**Notice of Auction Results** | Within one (1) day after the Auction or as soon as is reasonably practicable, Debtor shall file a notice ("Notice of Auction Results") disclosing the Auction results, including the identity of each Successful Bidder along with a copy of each proposed asset purchase agreement (or a summary of the principal terms thereof) for each Sale of Assets to each Successful Bidder. |
| **July 28, 2017 at 5:00 p.m.**<br>**(prevailing Eastern Time)**<br>**Sale Objection Deadline** | The Sale Objection Deadline, which is the deadline to file Cure Objections, Assignability Objections, Adequate Assurance Objections (as each is defined in the Bidding Procedures and Bidding Procedures Order) and any other objections to Sale Transaction(s) (each a "Sale Objection") shall be three (3) business days after the date Debtor files the Notice of Auction Results. |
| **July 31, 2017 at 12:00 p.m.**<br>**(prevailing Eastern Time)**<br>**Sale Reply Deadline** | The Sale Reply Deadline, the deadline for filing any replies or any omnibus reply to any Sale Objection shall be the later of two (2) days or one (1) business day after the Sale Objection Deadline. |
| **August 2, 2017 at 10:00 a.m.**<br>**(prevailing Eastern Time)**<br>**Sale Hearing** | The Sale Hearing to approve each proposed Sale Transaction shall be scheduled to be held before the Honorable Sean H. Lane, United States Bankruptcy Judge, at the United States Bankruptcy Court, Southern District of New York, Courtroom 701, located at One Bowling Green, New York, New York 10004-1408, two (2) days after the Sale Reply Deadline. |

28.  As above, the Debtor submits that conducting the foregoing Sale process by simply

soliciting from the Potential Buyer List, as well as from existing shareholders, counterparties and

others included in the Notice Parties, and pursuant to these expedited procedures under the Bidding Procedures, is reasonable and is in the best interests of the Debtor's estate and will provide parties with sufficient time and information necessary to formulate a bid to purchase the Debtor's assets.  Additional marketing efforts are not justifiable given Debtor's lack of liquidity and given that the Debtor already made extensive marketing efforts over the past several months and many of the potential bidders included in the Potential Buyer List have already expressed interest and already become knowledgeable about the Debtor and its assets.  Moreover, any potential bidder will have access to comprehensive information prepared by the Debtor and a substantial body of data.

29.  At this point in time, Debtor has exhausted efforts to conduct a viable reorganization and will soon have insufficient capital to maintain its business operations (in addition to the accrual of administrative expenses) and thus the expedited Sale process under the Bidding Procedures is the most effective, feasible and efficient course to maximize returns for the estate by selling Debtor's business while it still has realizable value as a going concern.  Failing to conduct such an expedited sale will jeopardize the Debtor's ability to maintain its operations during the pendency of the Sale process, which would result in a substantial loss of value for creditors and stakeholders and prevent going concern value from being extracted at the Auction.

## RELIEF REQUESTED

30.  By this Motion, pursuant to Bankruptcy Code sections 105(a), 363, and 365 and Bankruptcy Rules 2002, 6004, 6006, 9007, 9008, and 9014, the Debtor requests that the Court:

(a)  Enter the Bidding Procedures Order substantially in the form attached hereto as Exhibit 1:

(i)  approving the Bidding Procedures substantially in the form attached as Exhibit A

to the Bidding Procedures Order, including approving use of a proposed form of asset purchase agreement or Specimen APA substantially in the form attached as Exhibit B to the Bidding Procedures Order;

(ii) scheduling the Bid Deadline, Auction and Sale Hearing consistent with the proposed dates and deadlines set forth above and approving the form and manner of notice thereof as summarized above and as set forth in the Bidding Procedures Order, including approving the notice of Sale and notice of Sale Hearing substantially in the form of the Sale Notice attached as Exhibit C to the Bidding Procedures Order;

(iii) authorizing and approving the (A) notice to each a Counterparty to a Contract of the Debtor's proposed cure amounts (the "Cure Costs"), substantially in the form attached to the Bidding Procedures Order as Exhibit D (the "Assumption and Assignment Notice") and (B) the Assumption and Assignment Procedures set forth in the Bidding Procedures Order and in the Assumption and Assignment Notice for the assumption and assignment of Contracts and the determination of Cure Costs with respect thereto;

(b) Enter one or more Sale Orders in substantially the form attached hereto as Exhibit 2:

(i) authorizing the Sale of the Assets free and clear of all liens, claims, interests, and encumbrances with liens to attach to the proceeds of such Sale Transaction and authorizing the assumption and assignment of certain Contracts in connection therewith; and

(ii) granting related relief.

## BASIS FOR RELIEF

### A. The Bidding Procedures Are Appropriate and Are in the Best Interests of the Debtor and Its Estate

31. Bankruptcy Rule 6004(f)(1) provides that "[a]ll sales not in the ordinary course of business may be by private sale or by public auction." The paramount goal of any proposed sale of property of a debtor's estate is to maximize the value of the sale proceeds received by the estate. See Official Committee of Unsecured Creditors of Cybergenics Corp. v. Chinery, 330 F.3d 548, 573 (3d Cir. 2003) (the debtor has the "fiduciary duty to maximize the value of the bankruptcy estate."); Burtch v. Ganz (In re Mushroom Co.), 382 F.3d 325, 339 (3d Cir. 2004) (finding that debtor "had a fiduciary duty to protect and maximize the estate's assets."); In re

Food Barn Stores, Inc., 107 F.3d 558, 564- 65 (8th Cir. 1997) ("a primary objective of the Code [in asset sales is] to enhance the value of the estate at hand.") (internal citations omitted).

32. Courts recognize that procedures established for the purpose of enhancing competitive bidding are consistent with the fundamental goal of maximizing value for the debtor's estate. See Calpine Corp. v. O'Brien Envtl. Energy, Inc. (In re O'Brien Envtl. Energy, Inc.), 181 F.3d 527, 537 (3d Cir. 1999) (noting that bidding procedures that promote competitive bidding provide benefit to the estate); In re Fin'l News Network, Inc., 126 B.R. 152, 156 (Bankr. S.D.N.Y. 1992) ("court-imposed rules for the disposition of assets . . . [should] provide an adequate basis for comparison of offers, and [should] provide for fair and efficient resolution of bankrupt estates.").

33. The Debtors have structured the Bidding Procedures to attract competitive and active bidding from those parties with the financial capability to do so and from those parties who have already expressed interest based on the extensive marketing efforts Debtor undertook over the past several months. The Bidding Procedures will allow the Debtor to conduct the bidding and any Auction in a fair, controlled, and transparent manner that will encourage participation by financially capable bidders that demonstrate the financial wherewithal to close a transaction. Thus, the Bidding Procedures should be approved as reasonable, appropriate, and in the best interests of the Debtor, its estate, and all parties in interest.

**B. Entry into a Sale Transaction is a Sound Exercise of the Debtors' Business Judgment**

34. Bankruptcy Code section 363 provides that the debtor may, "after a notice and a hearing . . . use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363. Bankruptcy Code section 105(a) provides that the court "may issue

any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

35.    While the Bankruptcy Code does not specify the appropriate standard for approving sale of property under section 363, courts agree that a business judgment standard applies. See, e.g., Meyers v. Martin (In re Martin), 91 F.3d 389, 395 (3d Cir. 1996) (internal citations omitted); In re Chateaugay Corp., 973 F.2d 141, 143 (2d Cir. 1992); Committee of Equity Security Holders v. Lionel Corp. (In re Lionel Corp.), 722 F.2d 1063, 1071 (2d Cir. 1983). Courts typically apply four factors in determining whether a section 363 sale is appropriate, which factors include whether: (a) a sound business justification exists for the proposed sale; (b) adequate and reasonable notice of the sale under the circumstances was provided to interested parties; (c) the sale will produce a fair and reasonable price for the property; and (d) the parties have acted in good faith. Id. at 1070 (setting forth the "sound business" purpose standard for the sale of debtor's assets under Bankruptcy Code section 363).    Thus, when a debtor demonstrates a valid business justification for a decision, the presumption is that the business decision was made "on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company."    Official Comm. of Subordinated Bondholders v. Integrated Res. Inc. (In re Integrated Res., Inc.), 147 B.R. 650, 656 (S.D.N.Y. 1990) (quoting Smith v. Van Gorkom, 488 A.2d 858, 872 (Del. 1985)).

### 1.    The Debtor Has Demonstrated a Sound Business Justification for the Sale of the Assets

36.    A sound business justification exists where a sale of the debtor's assets is necessary to preserve the value of a Debtor's estates. See, e.g., Guilford Trans. Indus., Inc. v. Del. & Hudson Ry. Co. (In re Del. & Hudson Ry. Co.), 124 B.R. 169, 179 (D. Del. 1991) (approving the sale of a debtor as a going concern upon a showing of "a valid business purpose"); In re Lionel

Corp., 722 F.2d at 1071 ("requiring that a judge determining a § 363(b) application expressly find from the evidence presented before him . . . a good business reason to grant" the sale).

37. As set forth above, in the First Day Declaration and in the Sale Declaration, the Debtor has demonstrated a sound business justification for the expedited Sale and Bidding Procedures and for entry into any Sale Transaction that may result from the Auction. Despite extensive efforts since before and after the Petition Date, Debtor has not been able to secure any means to fund or implement a confirmable reorganization plan and soon Debtor will no longer be able to operate its business. Thus, at this time the Debtor has no viable option to preserve value except to conduct an expedited sale of its Assets to extract value as a going concern while the Debtor still is a going concern. Such course of action is consistent with the Debtor's fiduciary duties to its creditors and economic stakeholders.

**2.    The Notice Procedures Are Appropriate and Comply with Bankruptcy Rule 2002**

38. Bankruptcy Rule 2002 (a) and (c) require the Debtor to notify creditors of the Sale, including a disclosure of the time and place of any auction, the terms and conditions of the sale and the deadline for filing any objections.

39. The Debtor submit that the notice procedures, as described and incorporated into the Bidding Procedures, comply with Bankruptcy Rule 2002 and are reasonably calculated to provide all creditors and known parties in interest with adequate and timely notice of a Sale Transaction, the Bidding Procedures, the Auction and the Sale Hearing.

40. The Debtor requests that the Court approve the notice procedures as set forth herein, including the form and manner of the Sale Notice and Assumption and Assignment Notice, and that no other further notice of the Bidding Procedures, the Auction, and the Sale Hearing is necessary or required.

### 3.    The Proposed Sale Will Produce a Fair and Reasonable Purchase Price

41.  As set forth above, the Debtor believes that the proposed Sale will produce a fair and reasonable price for the Assets.  The Bidding Procedures were designed to ensure that the Auction, if necessary, will yield the maximum value for the Debtor's creditors and economic stakeholders. The Debtor constructed the Bidding Procedures to leverage the Potential Buyer List derived from Debtor's extensive marketing efforts over the past several months and to encourage competitive bidding while proceeding on an expedited basis to ensure Debtor can continue to operate pending the Sale process in order to extract going concern value.  These measures will preserve Debtor's value as a going concern to maximize Sale returned and will prevent any bid that does not constitute a fair and adequate purchase price for the Assets or any combination thereof.

42.  Further, parties in interest will have the opportunity to conduct diligence as set forth in the Bidding Procedures and many potential bidders have already expressed interest and already become familiar with Debtor's business.  Potential bidders will also have the opportunity to bid on a combination of, substantially all or a portion of the Assets.

### 4.    The Bidding Procedures Ensure a Good Faith Process and the Ultimate Purchaser(s) of Assets Is Entitled to the Protections of Bankruptcy Code Section 363(m)

43.  Bankruptcy Code section 363(m) is designed to protect the sale of a debtor's assets to a good faith purchaser.  Section 363(m) provides that:  "The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the

appeal, unless such authorization and such sale . . .were stayed pending appeal."  11 U.S.C. § 363(m).

44.   While the Bankruptcy Code does not define good faith, the United States Court of Appeals for the Third Circuit has held that indices of bad faith typically include "fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders." Cumberland Farms Diary, Inc. v. Abbotts Dairies of Penn., Inc. (In re Abbotts Diaries of Penn., Inc.), 788 F.2d 143, 147 (3d Cir. 1986) (internal citations omitted); see also Kabro Assoc. of West Islip, L.L.C. v. Colony Hill Assocs. (In re Colony Hill Assocs.), 111 F.3d 269, 276 (2d Cir. 1997) (noting that "misconduct that would destroy a [purchaser]'s good faith status at a judicial sale involves fraud, collusion between the [purchaser] and other bidders or the trustee or an attempt to take grossly unfair advantage of other bidders.").

45.   The Bidding Procedures were designed with the goal of producing a fair and transparent bidding process to allow the Debtor to generate the best offer for the Assets.  The Successful Bidder(s) and the Debtor will have negotiated at arm's-length and in good faith for the purchase of the Assets, backed by the Court-approved Auction.  Thus, the Debtor requests that the ultimate purchaser or purchasers of the Assets be entitled to the protections of Bankruptcy Code section 363(m).

**C.  The Sale of Assets Free and Clear of Liens, Claims, Interests, and Encumbrances Is Permitted and Appropriate Under Bankruptcy Code Section 363(f)**

46.   Bankruptcy Code section 363(f) authorizes a debtor to sell assets free and clear of each lien, claim, interest, and encumbrance provided that one of the following conditions are met:

> a.   applicable non-bankruptcy law permits sale of such property free and clear of such interest;

    b.  the entity holding each such interest consents;

    c.  such interest is a lien and the price at which such property is to be sold is greater than the value of all liens on such property;

    d.  such interest is in bona fide dispute; or

    e.  such entity could be compelled, in legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f)(1) – (5).

47. The Debtor represents that, any Sale Transaction that is pursued, such Sale Transaction will satisfy one of the five requirements set forth under Bankruptcy Code section 363(f), including, without limitation, that the holder of each lien on the Assets will consent to the sale or the purchase price will be at least as much as the actual value of any such lien. Thus, the Debtor may sell the Assets free and clear of any and all liens, claims, and encumbrances. Any lien holder will be adequately protected by attachment of its lien to the net proceeds of the Sale Transaction, subject to any claims and defenses that the Debtor may have with respect thereto. Accordingly, the Debtor requests that the Court authorize the Debtor to sell the Assets free and clear of any liens, claims, interests, and encumbrances in accordance with Bankruptcy Code section 363(f).

**D. Assumption and Assignment of Executory Contracts**

48. Bankruptcy Code section 365(a) provides that a debtor "subject to the court's approval, may assume or reject any executory contract . . ." 11 U.S.C. § 365(a).

49. Courts employ a business judgment standard in determining whether to approve a debtor's decision to assume or reject an executory contract. See, e.g., In re HQ Global Holdings, Inc., 290 B.R. 507, 511 (Bankr. D. Del. 2003) (finding that debtor's decision to assume or reject executory contract is governed by business judgment standard and can only be overturned if

decision was product of bad faith, whim, or caprice); In re Market Square Inn, Inc., 978 F.2d
116, 121 (3d Cir. 1992) (finding that assumption or rejection of lease "will be a matter of
business judgment by the bankruptcy court. . ."). The business judgment test "requires only that
the trustee [or debtor in possession] demonstrate that [assumption] or rejection of the contract
will benefit the estate." Wheeling-Pittsburgh Steel Corp. v. West Penn Power Co. (In re
Wheeling-Pittsburgh Steel Corp.), 72 B.R. 845, 846 (Bankr. W.D. Pa. 1987).

50. Debtor proposes to assume and assign Contracts to the Successful Bidder(s) as part
of the Sale Transaction(s). Assumption of Contracts is a sound exercise of the Debtor's business
judgment. Assuming and assigning Contracts may enable the Debtor to garner the highest or
otherwise best offer for the Assets, by enabling the Debtor to offer parties in interest with a
combination of Contracts that may be in some instances an integral part of the Assets that the
Debtor seeks to sell.

51. Bankruptcy Code section 365(f) requires, in part, that the assignee of any executory
contract provide "adequate assurance of future performance . . . whether or not there has been a
default in such contract." 11 U.S.C. § 365(f)(2). Section 365(b) codifies the requirements for
assuming an executory contract and provides, in pertinent part, that the debtor may only assume
an executory contract if it:

> (A) cures, or provides adequate assurance that the
> [debtor] will promptly cure[s] [any defaults existing
> under the executory contract];
>
> (B) compensates, or provides adequate assurance that
> the [debtor] will promptly compensate, a party other
> than the debtor to such contract . . . for any actual
>
> pecuniary loss to such party resulting from such default; and
>
> (C) provides adequate assurance of future performance under
>  such contract or lease.

11 U.S.C. § 365(b).

52. Adequate assurance is not specifically defined in the Bankruptcy Code but it is guided by "a practical, pragmatic construction based upon the facts and circumstances of each case." Carlisle Homes, Inc. v. Azzari (In re Carlisle Homes, Inc.), 103 B.R. 524, 538 (Bankr. D.N.J. 1988) (quoting In re Bon Ton Restaurant & Pastry Shop, Inc., 53 B.R. 789, 803 (Bankr. N.D. Ill. 1995)).   No single standard governs every case but adequate assurance "will fall considerably short of an absolute guarantee of performance." In re Carlisle Homes, Inc., 103 B.R. at 538.   Adequate assurance may be provided by demonstrating the assignee's financial health and experience in managing the type of enterprise or property assigned. See, e.g., In re Bygaph, Inc., 56 B.R. 596, 605-06 (Bankr. S.D.N.Y. 1986) (finding that assignee's industrial expertise, past success in operating a similar business, and financial wherewithal satisfied the adequate assurance requirement of section 365 of the Bankruptcy Code).

53. The Bidding Procedures specifically require any Qualified Bidders to provide financial and other information that would provide the Counterparties with adequate assurance of future performance of the applicable obligations under any Contract included as part of a Qualified Bid.   Moreover, the Debtor will provide adequate assurance information to all Counterparties to Contracts proposed for assumption and assignment, and upon request by such Counterparty, furnish additional adequate assurance information if reasonable and appropriate under the circumstances. Counterparties that are not satisfied with the proposed adequate assurance of future performance provided to them may file objections by the Sale Objection Deadline.

54. Thus, the Debtor has satisfied requirements of Bankruptcy Code section 365 with respect to the assumption and assignment of Contracts.

55. To facilitate the assumption and assignment of Contracts, the Debtor respectfully requests that the Court find that all anti-assignment provisions included in Contracts, if any, including those provisions that have the effect of restricting or limiting assignment, to be unenforceable and prohibited pursuant to Bankruptcy Code section 365(f).

56. Section 365(f)(1) provides, in pertinent part, that, "notwithstanding a provision in an executory contract or unexpired lease of the debtor, or in applicable law, that prohibits, restricts, or conditions the assignment of such contract or lease, the trustee may assign such contract or lease. . ." 11 U.S.C. § 365(f)(1). Further, section 365(f)(3) provides that "[n]otwithstanding a provision in an executory contract or unexpired lease of the debtor, or in applicable law that terminates or modifies, or permits a party other than the debtor to terminate or modify, such contract or lease or a right or obligation under such contract or lease on account of an assignment of such contract or lease, such contract, lease, right, or obligation may not be terminated or modified under such provision because of the assumption or assignment of such contract or lease by the trustee." 11 U.S.C. § 365(f)(3).

### E. The Sale of Assets Will Not Require Appointment of a Consumer Privacy Ombudsman

57. Bankruptcy Code section 363(b)(1) provides that a debtor may not sell or release personally identifiable information about individuals unless either the sale complies with the debtor's privacy policies previously given to consumers and these policies remain in place, or a consumer privacy ombudsman is appointed pursuant to Bankruptcy Code section 332.

58. Here, Debtor submits that the Sale will not include the transfer of personally identifiable information within the meaning of Bankruptcy Code section 363(b)(1) and thus there is no need for the appointment of a consumer privacy ombudsman.

## REQUEST FOR IMMEDIATE RELIEF AND WAIVER OF STAY

59.  Pursuant to Bankruptcy Rules 6004(h) and 6006(d), the Debtor seeks (a) entry of an order granting the relief sought herein, and (b) a waiver of any stay of the effectiveness of such an order.  Bankruptcy Rule 6004(h) provides that "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise."  Bankruptcy Rule 6006(d) provides that "[a]n order authorizing the trustee to assign an executory contract or unexpired lease under § 365(f) is stayed until the expiration of 14 days after entry of the order, unless the court order otherwise."

60.  As set forth above, the relief requested herein is necessary and appropriate to maximize the value of the Debtor's estate for the benefit of its creditors and economic stakeholders.  Thus, the Debtor submits that ample cause exists to justify (a) the immediate entry of an order granting the relief sought herein and (b) a waiver of the 14 day stay imposed by Bankruptcy Rules 6004(h) and 6006(d), to the extent that each Rule applies.

## NOTICE

61.  Notice of this Motion shall be given to (a) the Office of the United States Trustee for the Southern District of New York; (b) those creditors holding the 20 largest unsecured claims against the Debtor's estate; (c) counsel to the DIP Lender; (d); the Internal Revenue Service; (e) the Securities and Exchange Commission; and (f) all parties who have filed a notice of appearance and request for service of papers in this Case pursuant to Bankruptcy Rule 2002. The Debtor submits that no other or further notice of this Motion need be provided.

WHEREFORE, the Debtor respectfully request that the Court (i) enter the Bidding Procedures Order in substantially the form attached to this Motion as Exhibit 1 following any hearing for same; (ii) enter Sale Order in substantially the form attached to this Motion as

Exhibit 2 for each Sale Transaction following the Sale Hearing; and (ii) grant the Debtor such

further relief as may be appropriate.


Dated:  July 11, 2017                    WOLLMUTH MAHER & DEUTSCH LLP
       New York, New York

                                        */s/ John D. Giampolo*
                                        John D. Giampolo
                                        500 Fifth Avenue
                                        New York, New York 10110
                                        Phone: 212-382-3300
                                        *Attorneys for the Debtor and Debtor-in-Possession,*
                                        *Human Condition Safety Inc.*